Good morning. Jonathan Soglin, on behalf of the appellant, Mr. Langster. I'm going to start this morning with just a brief concession. I have a difficult job here today. I'm presenting the Zahabias case with the AEDPA standards applying, and the claims involve sufficiency of the evidence and an Eighth Amendment claim. I do plan to address both of those arguments. But I acknowledge that this is a difficult posture to be in. But this is an unusual case. And I want to start, indeed, talking about the standards that apply under AEDPA. This is a case where I've argued with respect to the sufficiency claim, both under the contrary to and the unreasonable application standards. Kagan What is the Federal question that we are called upon to decide in the sufficiency claim? You label it a sufficiency claim, but I'm trying to say what it really is. LANGSTER It's a due process violation. A verdict, a conviction that's not supported by sufficient evidence violates the right to due process. Kagan Yes. And the insufficiency is what? LANGSTER The insufficiency is with respect to the two false imprisonment convictions. And false imprisonment in California is generally a misdemeanor unless there's an additional fact proven, and that's the additional fact that's at issue here. And this under the statute, that additional fact can be, there's a number of things listed, including violence or menace. In this case, the theory was that it was a felony because the false imprisonment was committed by menace. And menace generally means a threat of harm. And in this case, the two Santa Clara University students claimed, denied that there was ever any express threat. They said there was no express threat of harm. There was no display of a weapon. And the evidence of menace in that there was a, this was a confrontation, and there had been a robbery immediately preceding this false imprisonment. The false imprisonment comes when the, Mr. Langster told the two men from Santa Clara to sit on a bench as a cyclist drove by. Kagan Okay. I guess I have a question about whether, the question of whether or not there has to be a direct threat in order to constitute menace. Isn't that a question, under California law, isn't that a question of State law? Waxman There's a, yes, it would be a question of State law as to what are the elements of the offense. And I'm not arguing that menace can be, cannot be, I'm not arguing that it can't be established by an implied threat. Kagan Okay. Waxman What I'm arguing here is there was no implied threat of harm. Well, he starts off saying, I'm deadly and dangerous. He, he seizes the kid's wallet when he doesn't come forth with it fast enough. He jerks the kid off balance practically in his violence. He's acting violent the whole time. He's reaching behind his waistband and looks to them like maybe he has a weapon. He's obviously scared them half to death in taking their money, and now he orders them to sit on the bench. So they sit on the bench. And I can see a person making an argument, oh, well, that's not so bad. But that doesn't seem to be our function. It looks to me as if he was menacing them to a fare they will. Just reading the cold record, it looks that way. Roberts Let me address it. The, the, first of all, their fear, the fact that they said they, they were in fear does not establish there actually was a menace. And But that means, that's whether or not it's reasonable for them to be afraid. I mean, isn't that a question for the jury? Well, it may reflect on, on what, what is happening in their perceptions. You know, it's real easy to sit, it's really easy to sit up here cool and calm. If I were out in the street at night and somebody came up to me and said, give me some money, that's not enough, grabbed my wallet from me, knocked me off balance practically, and then ordered me to sit somewhere. Maybe you wouldn't be scared. I'd be scared. And I think that person was menacing me. And by the way, looking objectively, if I were flying on the wall, I'd say, that guy's menacing those kids. I just can't understand. I can understand arguing it to a jury. I can even understand maybe making some kind of argument to an appellate court. But on habeas, we're going to say that that's so far beyond the pale, there's no menace under California law? Well, the, the, let me shift gears a little. There is one case that looks pretty strange in California law. Is it Maitin or something like that? Maitin, yes. Which has been attacked by other California cases, saying that's nuts. Anyway, we know we don't have to follow that as special. The, the, under the contrary, let me, let me focus on, on the ethos here for a moment. The, the State Court of Appeal, in addressing the facts and in laying out the facts, ignored substantial, important pieces of evidence. One of which is that one of these young men, upon being asked by, by the defendant to sit on the bench, says, no thanks, I'll stand. That phrase doesn't appear anywhere in the State court opinion. The fact Well, since when do State courts have to list every single piece of evidence in the case in order to decide that there was enough evidence to find this person guilty? Yes. Since when, when is, when did that become a federal standard? They don't, they don't have to list every piece of record, of evidence that shows up in the evidence. Jackson v. Virginia requires that in viewing the sufficiency evidence that they look at, at all the evidence. And Jackson expressly, expressly uses that phrase, all the evidence. So the court, the viewing court has to look at all the evidence. Was he ambiguous whether he ultimately did sit down, though? Ultimately, he did sit down. He did sit down. Yes. He said, no thanks, I'll stand, and then he did sit down. Is that right? But that's a, it's a substantial, it's, it's, it's a significant fact that reflecting on, on whether there was menacing going on, his willingness and feeling comfortable to, to first say, I'll, no thanks, I'll stand. Some people have a smart mouth and some of them get their heads blown off for having a smart mouth. So he has a smart mouth. He's not the primary person, was he, I think? Excuse me? He wasn't the primary person who was men, who was, had the wallet, am I right? He was not the one with the wallet. The two of them were together. They were both present and, and, and I think in equal proximity to the two. Well, you've acknowledged you have a hard row to hoe here. Do you want to touch, to talk, move to your Eighth Amendment claim? Regarding, regarding the Eighth Amendment claim, and, and I will just touch on that for a moment and reserve about, about two minutes. This is a case with looking at, obviously, we've got to have to look at Andrade, which is the, the U.S. Supreme Court authority on Eighth Amendment applications in the ADPA context. And looking at the records here, I think there's a, there is a, a substantial difference between Appellant's record and Andrade's. There are similarities in that both have, have long histories of criminal activity. But there's a significant difference in that the strikes involved, their prior strikes for Appellant resulted, this is from 1979, two strikes were, a two-year sentence was imposed for that, whereas for Mr. Andrade, the strikes that made him eligible for the three-strike sentence had previously, when they were originally convicted of those two prior strikes, he received 10-year sentences for those cases. You have to show this is one of those exceedingly rare cases, right? This guy with eight felonies, six misdemeanors, 12 parole violations in his not-so-far back, background, if you count it all back, you have to indicate that putting this guy away, as they did, is one of those exceedingly rare cases of extraordinary nature, right? That's right. Okay. That's, that's the language from, from Andrade. The other distinction is, is that Andrade, his current offenses, there were two of them, and while they, they were, were both petty thefts, they did involve separate occasions, which I think is a separate, significant fact, that he's, he's before the Court on being sentenced on two different offenses happening at different, on different occasions. And the offenses here were related how? They all happened within moments of each other. I mean, it's all, the offenses in this case was all one, one brief. What were they again? It was a robbery and false imprisonment. Okay. I'll reserve it for main time. May it please the Court. I think the next time I'm preparing for this panel, I'm going to ask myself what would Judge Fernandez ask, because I have checked off of any points I hope to make during this argument as he has posed questions to opposing counsel. The, the question here on the first issue is whether the State court acted unreasonably in determining that there was sufficient evidence of false imprisonment by menace. When the offense is considered in the context of the immediately preceding strong armed robbery, it's very clear that this State court's affirmance was neither contrary to nor in a reasonable application of Jackson v. Virginia. Menace is very simply shown by a threat of harm express or implied by word or by act. Here we clearly have it implied by act. How do you do a misdemeanor false imprisonment? If there's no, if they're none of those things, neither express nor implied threat of harm or violence. So. I suppose you can sneak up on somebody and lock the door when he's in a house or something. Yes. And there's also false imprisonment by deceit. There's other ways of achieving false imprisonment which do not involve violence. So trick somebody into staying somewhere by telling them something. I mean, you think the classical misdemeanor false imprisonment would be when you restrain somebody physically. But if it's force or violence, exactly, then it's a felony in California. So we don't even really need to reach that here because what we've got is this sort of implied menace version of it. And we're willing to submit on the brief at this point on that issue. And very briefly turning also to the Eighth Amendment issue. Unless there are questions. Yeah. In the menace, does the menace have to be, how does the State measure that? In other words, I believe that opposing counsel said it's not so much the effect on the victims as it is whether or not there's actually a threat made or force used or an implied threat made. Correct. It's an objective standard looking at what the defendant did, although certainly the victim's reaction is very good evidence of what the effect of that action was. I suppose they sat down when they were told. It's curious that a few minutes later, one of them standing outside the store that they went to the phone for a taxi and. And the defendant walks up to them and the guy just stands there. They weren't intimidated in a major way. Well, I think outside the store they felt a little safer because there were people around isolated out in the dark by the bus stop. It was a more dangerous situation. And, of course, they were thinking and trying to keep the defendant calm, and it ultimately led to his arrest. They got all the description they needed and the direction he went in and were able to, you know, tell the police all that. I think actually the young men were just trying to keep their heads, and I think that explains a lot of what they say to him. I think they're trying to keep him calm because I think they really believe there's a knife or a gun in his belt, which they don't want to see. If there are no further questions on that issue, may I turn briefly to the Eighth Amendment claim? The litany of the defendant's prior criminal history is rather extensive. In addition to the two prior strikes, it's actually a total of eight felony convictions, one of them, in addition to the two strikes, a serious felony conviction. And the current felony, the robbery, is a serious felony conviction. There are six misdemeanors. There are 12 parole violations. As the District Court of Appeal in California here found, the defendant is exactly the type of person who must be segregated from society in order to protect the community from his utter disregard for the rights of others. This pretty much sums up a poster child for the three strikes law, and certainly this is not the exceedingly rare case described by Solemn v. Helm in which a noncapital sentence must be overturned as disproportionate. Again, which were the cases that the – which were the convictions that were used? There were so many enhancements here that I got a little confused. Right. The two strike priors were the early robbery and burglary. Any felony given those two prior strikes would then qualify him for the strikes. That was 20 years before? Right. But in the interim, there were six additional felonies, six additional misdemeanors, as I understand it, and 12 parole violations. It's a fairly consistent history of disregard for the rights of others, as the Court put it. In California, the length since a prior is something that the Court can take into consideration, but along with that, the behavior since that prior, whether they've led a blameless life since that earlier time, is also very relevant, and clearly the defendant has established that whenever he gets out, he does something to earn his way back in. Any further questions? Thank you very much. Just very briefly, I wanted to sort of follow up on the question Judge Canby was asking about the distinction between the misdemeanor and the felony. There is the Babbage case, which the Attorney General has not addressed today or in the brief, which states that the felony, the element establishing the felony must go beyond that for the misdemeanor, such in the case of where violence is used to establish menace, the violence making it a felony must exceed the violence that made it, created the restraint, and the same must apply with the menace. If his conduct was causing the restraint, any menace here must indeed go beyond that that established the mere restraint for the misdemeanor false imprisonment, and that did not, was not established in this case. And finally, counsel commented on the serious felony nature of the prior convictions. That was taken into account. This is not just someone whose sentence was enhanced under the three strikes law. It was enhanced under two other recidivist statutes. One gave him an additional five years for having a serious felony, and the other gave him five one-year enhancements for each time he had been in state prison previously. So he's not your typical three-striker in the sense that he's not coming with a 25-to-life sentence. He's coming with a 35-to-life sentence, and a lot of these factors are otherwise reflected. Okay. You have your time. Thank you. The matter just argued is submitted for decision.
judges: Schroeder, Canby, Fernandez